UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MERRIMACK MUT. FIRE INS. CO. : | |
|    Plaintiff : | |
| : | No. 20-cv-00791 (VLB) |
| v. : | |
| : | |
| KIM RENCHY HODGE, : | March 2, 2021 |
| SALLY DURSO, AND : | |
| CSAA AFFINITY INS. CO. : | |
|    Defendants. : | |
| : | |
| : | |

### MEMORANDUM OF DECISION
### DENYING DEFENDANTS' MOTION FOR REMAND, Dkt. 17

This matter is an insurance coverage dispute arising from bodily injuries sustained when Defendant Sally Durso ("Ms. Durso") tripped and fell on Defendant Kim Renchy Hodge's ("Ms. Hodge") driveway after Ms. Renchy Hodge activated her vehicle's handicap ramp. [Dkt. 1 (Compl.) ¶¶ 12-15]. Ms. Durso sued Ms. Hodge seeking to recover economic and non-economic damages for injuries sustained in the accident. *Id.* 6.; [Dkt. 1-1, Pl. Ex. 1 (Underlying Action)]. Plaintiff Merrimack Mutual Insurance Company ("Plaintiff or "Merrimack") issued a homeowner's insurance policy to Ms. Hodge for the relevant policy period. [Compl. ¶ 5]. Ms. Hodge sought coverage and a defense under the Merrimack policy; Merrimack assigned defense counsel but reserved its rights to deny coverage. *Id.* ¶ 16-17. The Underlying Action was also tendered to Ms. Hodge's automobile liability insurer, Defendant CSSA Affinity Insurance Company ("CSAA"). *Id.* ¶¶ 18-21. The Complaint alleges that CSAA denied coverage to Hodge and refuses to defend Hodge. *Id.* ¶ 22.

1

**This case was brought as a declaratory judgment by Merrimack against Ms. Hodge, Ms. Durso, and CSAA pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. The Complaint seeks a declaration that Merrimack has no duty to defend or indemnify Ms. Hodge with respect to the claims and damages asserted in the Underlying Action.** *Id*. **¶¶ 23-29 (count one). Merrimack also seeks a declaration that Ms. Hodge's alleged liability for Ms. Durso's injuries and damages are covered by the automobile liability policy issued by CSAA.** *Id*. **¶¶ 30-35 (count two). Finally, Merrimack seeks to recover the full costs of its defense of Ms. Hodge in the Underlying Action from CSAA based on equitable subrogation.** *Id*. **¶¶ 36-39 (count three).**

**Defendants CSAA and Ms. Hodge now move pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss the action for lack of subject matter jurisdiction. [Dkt. 18 (Def. Mem. in Supp.)].[1] Specifically, the Defendants contend that Plaintiff has not established that the Court has diversity jurisdiction over this matter because Plaintiff relies on generic allegations that the amount in controversy exceeds $75,000.** *See generally* **[Dkt. 18 (Def. Mem. in Supp.)].**

---

[1] **The parties' briefing fails to comply with the formatting instructions contained in this Court's Chambers Practices, [Dkt. 8]. The Defendants' brief was in the correct font but was manually scanned. The Court's Chambers Practices specifically provides that "[d]ocuments may not [] be signed manually and may not be scanned."** *Id*. **at 1. Defendants' filings do not comply with the tagged PDF format for enabling text recognition.** *Id*. **Inclusion of the law firm's stationary on each page of the memorandum is also unnecessary. Plaintiff's brief was appropriately filed, but it does not comply with the font requirement, which requires that documents must be typewritten using Arial bold 12-point font.** *Id*. **In all future matters, the Court will return any filings that do not comply with Chambers Practices and order briefing to establish why good cause to refile exists.**

**2**

For reasons stated herein, the Court DENIES Defendants' motion to dismiss.

## Standard of Review

It is axiomatic that federal courts have limited subject matter jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013). The party asserting federal jurisdiction must establish that jurisdiction exists by a preponderance of the evidence. *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006). "Subject matter jurisdiction is not waivable, and a lack of subject matter jurisdiction may be raised at any time, by a party or the court *sua sponte*. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *see also Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) ("Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy."). If a court lacks subject matter jurisdiction, it must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3). As it pertains to the Court's diversity jurisdiction, "[t]he intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938).

A "district court must take all uncontroverted facts in the complaint [ ] as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). However, "where jurisdictional facts are placed in dispute, the court has the

3

power and obligation to decide issues of fact by reference to evidence outside the pleadings. . . ." *Id*.

## Discussion

Under 28 U.S.C. § 1332(a), federal courts have jurisdiction to hear civil actions between "citizens of different States" as long as "the matter in controversy exceeds ... $75,000." The term "citizens of different States" grants jurisdiction only "if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the same State." *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998).

In this case, complete diversity exists as the Plaintiff is domiciled and maintains its principle place of business in Massachusetts, Ms. Hodge and Ms. Durso are both Connecticut citizens, and CSAA is domiciled in Arizona with a principle place of business in California. [Compl. ¶¶ 1-4]. The Defendants do not place any of these jurisdictional facts into controversy. Instead, the issue of whether diversity jurisdiction exists rests on whether the amount in controversy has been satisfied.

"A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a "reasonable probability" that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994). In determining whether a reasonable probability exists, "…the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than

4

the jurisdictional amount to justify dismissal." *St. Paul Mercury*, 303 U.S. at 288–89 (1938)(footnotes omitted). To overcome the "face of the complaint" presumption, "[t]he legal impossibility of recovery must be so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim." *Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Trust Co. of Chicago*, 93 F.3d 1064, 1070–71 (2d Cir.1996)(quoting *Tongkook*, 14 F.3d at 785–86). The good faith standard includes an objective and subjective component. *Tongkook*, 14 F.3d at 785-86. If the recovery is uncertain, the doubt should be resolved in favor of the plaintiff's pleadings based on subjective good faith. *Id.* at 785. However, good faith alone does not control if it becomes objectively clear that the plaintiff could not recover the jurisdictional amount. *Id.* at 785-86 (dismissing case for lack of subject matter jurisdiction where discovery showed that, at the time the action commenced, the plaintiff was owed less than the jurisdictional amount, despite plaintiff subjective good faith). Waivable affirmative defenses, including the preclusion doctrines, do not whittle down the amount in controversy. *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 398-99 (2d Cir. 2003).

In declaratory judgments over insurance coverage, it is the value of the underlying claim that determines the amount in controversy, not the face value of the policy. *Amica Mut. Ins. Co. v. Levine*, 7 F. Supp. 3d 182, 187 (D. Conn. 2014). Here, Plaintiff is not contesting the validity of the policy, but rather whether its terms apply to the loss sustained and thus the amount in controversy is the value of the underlying claim at the time the complaint was filed. *See Id.*

The Defendants argue that, contrary to the allegations in the complaint, CSAA is defending Ms. Hodge in the Underlying Action and is not reserving its rights as to coverage. [Def. Mem. in Supp. at 5](citing Dkt. 18-1 (Def. Ex.B (May 5, 2020 Coverage Ltr.)]. Next, Defendants argue that the only allegations in the Complaint offered to support Plaintiff's contention that the amount in controversy is satisfied are conclusory statements. *Id.* at 7 (citing Compl. ¶¶ 9-10)(" "[u]pon information and belief, the amount in controversy exceeds $75,000.00, exclusive of interests and costs" and that "the amount in controversy exceeds $75,000.00"). The Defendants argue that the amount of the medical bills and the extent of her alleged injuries are unknown and thus the Court "would necessarily need to engage in impermissible speculation — evaluation without the benefit of any evidence [proving] the value of individual claims." *Id.* (quoting *Auto-Owners Ins. Co. v. Scott*, 9-cv-166(HL), 2009 WL 3011244, at *2 (M.D. Ga. Sept. 16, 2009). The Defendants cite this Court's decision in *Levine* as an example where jurisdiction was lacking because at the time the complaint was filed, there was only $46,905.24 in damages and no evidence as to continued treatment or permanent disability. *Id.* at 8 (citing *Levine*, 7 F. Supp. 3d at 191-92); *see also Toler v. State Farm Mut. Auto. Ins. Co.*, 25 F. App'x 141 (4th Cir. 2001)(remanding case to determine whether amount in controversy was satisfied where remaining claims sought coverage under two insurance policies for $25,000 in medical payment coverage and defendants already received $39,000 in benefits under the policies).

In opposition, Plaintiff argues that it alleged facts sufficient to support its contention that the amount in controversy exceeded $75,000 because of the

6

seriousness of Ms. Durso's injuries as alleged on the face of the complaint in the Underlying Action, which remain uncertain. [Dkt. 20 (Pl. Mem. in Opp'n) at 8-9]. Plaintiff argues the Defendants fail to overcome the rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy because they failed to show to a legal certainty that the amount recoverable does not meet the jurisdictional threshold. *Id.* at 10-13. The Court agrees with the Plaintiff.

The Defendant is correct in its analysis that the amount in controversy for an insurance coverage dispute is determined by reference to the amount of the underlying claim. [Def. Mem. in Supp. at 8]. The rule stems from the principle that when a plaintiff seeks declaratory relief, the amount in controversy for purposes of section 1332 is the "value of the object of the litigation." *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 347 (1977). That amount is the potential sum that Ms. Durso could recover from the Merrimack policy, plus Merrimack's cost of defense. *Am. Safety Cas. Ins. Co. v. 385 Onderdonk Ave., LLC*, 124 F. Supp. 3d 237, 243 (E.D.N.Y. 2015)

The Complaint itself does not expound on the extent of Ms. Durso's injuries; however, Plaintiff affixed a copy of the Underlying Action as an exhibit to the Complaint, which alleges the extent of her alleged injuries and damages. Pursuant to Federal Rule of Civil Procedure 10(c), "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." The Court considers the allegations in the

Underlying Action as part of the Complaint because it was attached as an exhibit, the allegations are integral to the complaint for declaratory relief as it is the basis for determining the insurers' defense and indemnity obligations, and it was incorporated by reference pursuant to Fed. R. Civ. P. 10(c). *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted); see *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 274 Conn. 457, 463, 876 A.2d 1139 (2005)(insurer's defense obligations are determined by the allegations in the complaint).

The Underlying Action, styled *Sally Durso v. Kim Renchy-Hodge*, filed in Superior Court for the State of Connecticut, Judicial District of New Haven on April 7, 2020, alleges that:

> as a result of said incident, plaintiff sustained severe, painful and permanent injuries. She sustained severe shock to her nervous system, a left surgical neck fracture of the proximal humerus, with displacement and communition, a fracture of the left greater tubercle and a contusion of the right knee. Said injuries have caused, and will continue to cause, the plaintiff severe pain and suffering, great mental anxiety and distress of mind.

Underlying Action ¶ 4

As to her damages, Ms. Durso alleged that she incurred medical expenses for hospital and surgical treatment and will be forced to incur further expenses in the future. *Id.* ¶ 5. She alleges that her earning and functional capacities have been permanently impaired. *Id.* ¶¶ 6-7. Of note, Ms. Durso's claims remain unresolved and, given the extent of her injuries and damages, there remains reasonable probability that her damages are in excess of $75,000, providing further support for the reasonableness of Plaintiff's good faith contention that the damages exceeded the jurisdictional threshold at the time the complaint was filed.

Thus, the Defendant's must show to a "legal certainty" that the amount recoverable did not exceed the jurisdictional threshold. *Tongkook*, 14 F.3d at 785. The Defendant's motion concedes that Ms. Durso's damages, which include both economic and non-economic damages, are uncertain. [Def. Mem. in Supp. at 8-9]("… at the time of the filing of this lawsuit, the amount of medical bills incurred by Durso or the extent of her alleged injuries in the [Underlying Action] were unknown."). However, the rule is that "where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings." *Tongkook Am., Inc.*, 14 F.3d at 785.

This case is distinguishable from *Levin*. In *Levin*, the issue concerned medical payments coverage under an automobile liability policy and the defendant-insured incurred $46,905.24 in medical expenses. 7 F. Supp. 3d at 191. The plaintiff-insurer did not alleged that its insured had not "reached maximum medical improvement, that she has a permanent disability, or that she is still being treated for her injuries," thus the Court could not infer that the damages that were potentially compensable under the policy would continue to mount. *Id*. As a result, the defendant-insured established that there was a legal certainty that the coverage dispute concerned a sum less than $75,000 because the damages, confined to the payment of medical expenses, were finite.

By comparison, here, the Complaint alleges that the tort victim sustained specific orthopedic injuries causing permanent functional loss. Unlike *Levin* the dispute concerns whether Plaintiff must defend and indemnify its insured, Ms. Hodge, for the totality of the injuries sustained by Ms. Durso for which Ms. Hodge

9

would be liable, up to the policy limit. The Defendants have not shown that the liability and damages were established by a judgment or settlement for a sum less than $75,000 before suit was filed or that Merrimack's policy limits are less than $75,000, thereby limiting the amount of coverage in dispute.

The Court finds there is complete diversity between the parties and the amount in controversy requirement is satisfied; and therefore, the Court holds it has original diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

## Conclusion

For the above stated reasons, the Court DENIES Defendants' motion to remand.

                                          IT IS SO ORDERED

                                          _____/s/_____

                                          Hon. Vanessa L. Bryant
                                          United States District Judge

Dated at Hartford, Connecticut: March 2, 2021