# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MERIMACK MUT. FIRE INS. CO.  :
           :
Plaintiff,        :  No. 3:20-cv-00791 (VLB)
           :
v.            :
           :
KIM RENCHY HODGE,    :
SALLY DURSO, AND     :
CSAA AFFINITY INS. CO.   :
           :
Defendants.

## MEMORANDUM OF DECISION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. 52]

This is an action for a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, brought by Merrimack Mutual Fire Insurance Company ("Merrimack") against Kim Renchy Hodge ("Ms. Hodge"), Sally Durso ("Ms. Durso"), and CSAA Affinity Insurance Company ("CSAA") (collectively "Defendants"). Merrimack seeks a declaratory judgment that it is not obligated to defend or indemnify Ms. Hodge with respect to the claims and damages brought by Ms. Durso in a state court action stemming from bodily injuries sustained when Ms. Durso tripped and fell on Ms. Hodge's driveway after Ms. Hodge activated her vehicle's handicap ramp. [Dkt. 49 (Amended Compl.) ¶¶ 12-15, 21-29]. At the time this incident occurred, Ms. Durso had a homeowner's insurance policy with Merrimack and an automobile insurance policy with CSAA. [*Id.* ¶¶ 5, 20].

Merrimack now moves for summary judgment on all claims. [Dkt. 52 (Pl. Mot.)]. Merrimack contends that it has no duty to defend or indemnify Ms. Hodge because the claims in the underlying state court action are excluded from coverage

pursuant to the motor vehicle liability exclusion in Ms. Hodge's Merrimack policy. [*Id.*] Ms. Durso opposes summary judgment, arguing that this incident does not fall under the exclusion because her injuries were caused by poor lighting conditions in Ms. Hodge's driveway. [Dkt. 57 (Opp.) p. 3].

For the reasons explained below, the Court GRANTS Merrimack's motion for summary judgment on all counts.

## BACKGROUND

The following facts are taken from Merrimack's Local Rule 56(a)(1) statement of material facts and evidence cited therein. [Dkt. 54]. Ms. Durso did not file a Local Rule 56(a)(2) statement, therefore the facts set forth herein are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)(3).

### I.      Underlying Incident

Ms. Durso was a caregiver for Ms. Hodge. [Dkt. 53-2 (Ms. Durso's Depo, Pl.'s Ex. B) p. 17:11-14]. On November 30, 2019, Ms. Durso was driving Ms. Hodge in Ms. Hodge's personal vehicle, a Dodge 2002 Caravan and parked the vehicle in Ms. Hodge's driveway in front of her home in Guilford, Connecticut. [Dkt. 54 ¶ 4]. After parking the vehicle, Ms. Durso exited and walked around the back of the vehicle to "release the hook [on the floor] so [Ms. Hodge] could drive herself out." [Dkt. 53-2 p. 56:23-25]. As Ms. Durso walked along the passenger side of the vehicle, she tripped over the mechanical handicapped ramp that was attached to and extended from the vehicle. [Dkt. 54 ¶ 7]. Ms. Durso "[did not] realize that [Ms. Hodge] had

released the lever for the ramp[.]" [Dkt. 53-2 p. 52:4-7]. At the time of this incident, Ms. Hodge's vehicle was registered for use on public roads. [Dkt. 54 ¶ 8].

## II.    State Court Action

On April 7, 2020, Ms. Durso filed a Complaint against Ms. Hodge in Connecticut Superior Court asserting negligence and personal injury claims from this incident. [Dkt. 54 ¶ 12]. Merrimack issued Homeowners Policy No. HP 3150880 to Ms. Hodge for the policy period from August 4, 2019 to August 4, 2020. [*Id.* ¶ 1]. Ms. Hodge sought coverage under the Merrimack policy for damages awarded in this action. [*Id.* ¶ 13]. Merrimack assigned counsel to defend Ms. Hodge subject to a reservation of rights to decline coverage. [*Id.*].

## III.    Relevant Policy Language

Section II of the Merrimack homeowner's policy excludes coverage for "any 'motor vehicle liability' if, at the time and place of an 'occurrence', the involved 'motor vehicle' is registered for use on public roads or property…." The policy defines "motor vehicle liability" as:

> Liability for "bodily injury" or "property damage" arising out of the: (1) ownership of such vehicle…by an "insured"; (2) maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person; (3) entrustment of such vehicle or craft by an "insured" to any person; (4) failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or (5) vicarious liability whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

[Dkt. 53-1 (Merrimack Policy, Pl.'s Ex. A) PDF p. 22].

In the instant action, Merrimack seeks a judgment declaring that Merrimack has no duty to defend or indemnify Ms. Hodge with respect to the claims and damages asserted by Ms. Durso arising out of the November 30, 2019 incident. [Dkt. 49].

## LEGAL STANDARD

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007).  "Material facts are those which 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Coppola*, 499 F. 3d at 148 (citing to *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) ("*Liberty Lobby*").  But "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Wang v. Hearst Corp.*, 877 F.3d 69, 76 (2d Cir. 2017) (citing to *Liberty Lobby*, 477 U.S. 248)).  Whether a fact is material is determined by the substantive law.  *Liberty Lobby*, 477 U.S. at 248.

On a motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Green v. Town of E. Haven*, 952 F.3d 394, 405–06 (2d Cir. 2020) (citing to *Liberty*

4

*Lobby*, 477 U.S. at 250).  "Thus, in ruling on a motion for summary judgment, 'the district court is required to resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" *Id.* (citing to *Kessler v. Westchester County Department of Social Services*, 461 F.3d 199, 206 (2d Cir. 2006)).

   "The moving party bears the burden of showing the absence of a genuine dispute as to any material fact . . . ."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).  "[W]here the nonmoving party will bear the burden of proof on an issue at trial, the moving party may satisfy its burden by 'point[ing] to an absence of evidence to support an essential element of the nonmoving party's case."  *Id.* (citation omitted).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* (citing to *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).

> A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient.

*Welch–Rubin v. Sandals Corp.*, No. 3:03-cv- 481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (internal quotation marks and citations omitted); *Martinez v. State of Connecticut*, 817 F. Supp. 2d 28, 37 (D. Conn 2011). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Hayut v. State Univ. of New York*, 352 F.3d 733, 743 (2d Cir 2003) (citing

to *Liberty Lobby*, 477 U.S. at 252)). Where there is no more than a scintilla of evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust and Clearance Co.*, 604 F.3d 712, 727 (2d Cir. 2010).

A party's own affidavit may be enough to fend off summary judgment if it is based on personal knowledge and is consistent with prior pleadings and testimony. *See Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 53 (2d Cir. 1998) (reversing district court grant of summary judgment because district court did not give party's affidavit weight and affidavit was consistent with prior pleadings and testimony); *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (same). However, if the affidavit is inconsistent with prior deposition testimony or pleadings, it does not create "a genuine issue for trial."  *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996); *see Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir.2011) ("in certain extraordinary cases, where the facts alleged are so contradictory that doubt is cast upon their plausibility, the court may pierce the veil of the complaint's factual allegations and dismiss the claim.").

Local Rule 56(a) outlines the local requirements for filing and responding to a motion for summary judgment, including the Local Rule 56(a) statement requirements.  Local Rule 56(a)(1) requires the party moving for summary judgment to file and serve a memorandum entitled "Local Rule 56(a)(1) Statement of

Undisputed Material Facts." This memorandum is required to "set forth, in separately number paragraphs . . . a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried."  Loc. R. 56(a)(1). When responding to the motion for summary judgment, the nonmoving party is to provide a Local Rule 56(a)(2) Statement of Facts in Opposition to Summary Judgment, "which shall include a reproduction of each numbered paragraph in the moving party's Local Rule 56(a)(1) Statement followed by a response to each paragraph admitting or denying the fact and/or objecting to the fact as permitted under Federal Rule of Civil Procedure 56(c)." Loc. R. 56(a)(2). Local Rule 56(a)(3) provides that each statement of material fact must be followed by a specific citation. The failure to provide specific citations may result in the court deeming a fact admitted, or imposing sanctions: "including, when the movant fails to comply, an order denying the motion for summary judgment, and when the opponent fails to comply, an order granting the motion if the motion and supporting materials show that the movant is entitled to judgment as a matter of law."  Loc. R. 56(a)3.

Rule 56 of the Federal Rules of Civil Procedure require "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record . . .; or (B) *showing* that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. Pro. 56(c) (emphasis added).  In reviewing a motion for summary judgment, "[t]he court need consider only cited materials, but it may consider other

materials in the record." Rule 56(c)(3). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." Rule 56(e).

## DISCUSSION

There is no genuine issue of material fact[1] so the only question before the Court is whether Merrimack is entitled to judgment as a matter of law. Merrimack argues that it has no obligation to defend or indemnify Ms. Hodge because Ms. Durso's claims are excluded from coverage pursuant to the motor vehicle liability exclusion. The Court agrees that this exclusion clearly and unambiguously applies and grants summary judgment in favor of Merrimack.

### I.   Applicable Law

The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because no plaintiff and no defendant are citizens of the same state and the amount in controversy exceeds $75,000. [Dkt. 34 (Mem. of Dec. Denying Def.'s Mot. for Remand)].

Federal courts sitting in diversity apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 498 (1941). Absent a choice

---

[1] Ms. Durso did not file a Local Rule 56(a)(2) statement, therefore the facts set forth in Merrimack's Local Rule 56(a)(1) statement are deemed admitted.

of law provision in a contract, Connecticut courts apply the "most significant relationship" test of the Restatement (Second) of Conflict of Laws § 188. *Reichhold Chemicals, Inc. v. Hartford Accident & Indem. Co.*, 252 Conn. 774, 781 (2000) (a/k/a "*Reichhold II*").

In *Reichhold II*, the Connecticut Supreme Court recognized a rebuttable presumption in favor of applying the law of the state "which the parties understood was to be the principal location of the insured risk." 252 Conn. at 782 (citing § 193 of the Restatement (Second)). That presumption may be overcome by a showing of "…*exceptional* circumstances where the interests of another state *substantially* outweigh the interests of the site state." *Id.* at 789 (emphasis added).

Here, Connecticut is the location of the insured risk and both parties apply Connecticut law. Thus, the object of the Court's inquiry is to "…ascertain what the [Connecticut] law is, not what it out to be." *Klaxon Co*, 313 U.S. at 497.

## II.      Rules of Construction

Under Connecticut law, the interpretation of an insurance contract is a question of law for the Court that "is to be interpreted by the same general rules that govern the construction of any written contract." *See Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 274 Conn. 457, 462-63 (2005); *Zulick v. Patrons Mut. Ins. Co.*, 287 Conn. 367, 372-73 (2008). A court must construe the insurance contract to effectuate "the intent of the parties, that is, what coverage the….[insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy…." *Liberty Mutual Ins. Co. v. Lone Star Indus., Inc.*, 290 Conn. 767, 795 (2009) (quoting *Allstate Ins. Co. v. Barron*, 269 Conn.

9

394, 406 (2004)). Overall, policy language must be construed "as laymen would understand it and not according to the interpretation of sophisticated underwriters…; the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view." *R.T. Vanderbilt Co., Inc. v. Cont'l Cas. Co.*, 273 Conn. 448, 462 (2005) (quoting *O'Brien v. United States Fidelity Guar. Co.*, 235 Conn. 837, 843 (1996)).

Clear and unambiguous policy terms must be given their "natural and ordinary meaning," and a court "cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." *Schultz v. Hartford Fire Ins. Co.*, 213 Conn. 696, 702-03 (1990). A court may not "torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings." *Id.* at 703 (quoting *Downs v. Nat'l Cas. Co.*, 146 Conn. 490, 494-95 (1959). However, where a term in an insurance policy is ambiguous, such ambiguity "must be resolved in favor of the insured." *Liberty Mutual*, 290 Conn. at 796. Ambiguous terms in an insurance policy are those that are "reasonably susceptible to more than one reading." *Conn. Med. Ins. Co. v. Kulikowski*, 2806 Conn. 1, 7 (2008). This ambiguity must exist in the policy language itself and cannot derive from a party's "subjective perception of the terms." *Id.*

III.     "Motor Vehicle Liability" Exclusion

In this case, there is no dispute that Ms. Hodge's vehicle was registered for use on public roads. [Dkt. 54 ¶ 8]. Therefore, the "motor vehicle liability" exclusion applies if Ms. Durso's injury arose out of the:

> (1) ownership of such vehicle…by an "insured"; (2) maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person; (3) entrustment of such vehicle or craft by an "insured" to any person; (4) failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or (5) vicarious liability whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

[Dkt. 53-1 PDF p. 22]. The Connecticut Supreme Court has applied the rules of construction to policy definitions similar to the one in the present case.   In interpreting a motor vehicle exclusion in a homeowner's policy with nearly identical language, the Connecticut Supreme Court held that:

> [F]or a liability for an accident or an injury to be said to 'arise out of' the 'use' of an automobile for the purpose of determining coverage under the appropriate provisions of a liability insurance policy, it is sufficient to show only that the accident or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' the use of the automobile, in order to meet the requirement that there be a causal relationship between the accident or injury and the use of the automobile.

*Hogle v. Hogle*, 167 Conn. 572, 577 (1975) (citations omitted). In *Hogle*, the plaintiff brought an action against her husband to recover damages for personal injuries sustained in an automobile accident that she alleged in her complaint was caused by the defendant's negligence in operating the vehicle. *Id.* at 574. The defendant filed a third-party complaint against his homeowner's insurer alleging that his dog caused the accident when the dog jumped onto the defendant while he was driving

11

and that his homeowner's policy covered any injury or damage caused by the dog. *Id.* The court rejected the defendant's argument that the homeowner's insurer is obligated to cover the damages because the dog "constituted the 'proximate cause' of the accident, and consequently [the plaintiff's] injuries." *Id.* at 578. The court instead adopted a much broader interpretation of the motor vehicle liability exclusion to apply when the "use of [the car] was connected with the accident or the creation of a condition that caused the accident." *Id.*

Applying *Hogle*, the Connecticut Supreme Court again held that a motor vehicle exclusion in a homeowner's policy containing substantially identical language to the policy in the present case excluded coverage for injuries suffered by houseguests after their host left her car running overnight in an attached garage and the house filled with carbon monoxide. *New London County Mut. Ins. Co. v. Nantes*, 303 Conn. 737, 739 (2012). The court acknowledged that the injuries "stem from two causes, one falling within the exclusion, that is [the homeowner's] act of leaving her car running in the garage, and the other arguably falling outside the exclusion, that is, [the homeowner's] act of closing the garage door." *Id.* at 758. However, under the broad interpretation of "use" of the car set forth in *Hogle*, the court found it irrelevant that an arguably covered event…was a contributing cause of [the injury]". *Id.*

Merrimack argues that *Hogle* and *Nantes*, along with other persuasive decisions from Connecticut courts establish that Ms. Durso's alleged injuries arose

out of Ms. Hodge's ownership of the vehicle, or the maintenance, occupancy, operation, use, loading or unloading of the vehicle.[2]

There is no dispute as to how the fall occurred. Ms. Durso's testimony at her deposition and her answer to the amended complaint demonstrate that Ms. Durso's injuries occurred after she had just driven Ms. Hodge and tripped on a ramp attached to the vehicle while walking around the car to help Ms. Hodge out. The use of Ms. Hodge's vehicle was both "connected with the accident" and "[created the] condition that caused the accident." *See Hogle*, 572 Conn. at 578. Under *Hogle* and *Nantes*, the only reasonable conclusion a fact finder can arrive at is that the motor vehicle liability exclusion bars coverage.

Ms. Durso's argument focuses on what she believes was the cause of her injury, the poor lighting conditions in her driveway. She argues that the motor vehicle liability exclusion does not bar coverage because she tripped as a result of inadequate lighting in the driveway and not any defect related to the vehicle. Ms. Durso likens her injury to an injury sustained from tripping over a freestanding obstacle in Ms. Hodge's driveway alleging that it does not matter what she tripped over since she only tripped because of the unlit driveway.

Ms. Durso presents no factual or legal basis supporting this contention. She attempts to distinguish her case from *Nantes* by arguing that "the Connecticut Supreme Court in *Nantes* placed the utmost emphasis on the fact that 'the

---

[2] Merrimack incorrectly cites to *Nationwide Mut. Ins. Co. v. Pasiak*, stating that *Pasiak* interpreted a motor vehicle liability exclusion in a homeowner's insurance policy when in fact it dealt with a business pursuits exclusion. The court in *Pasiak* however adopted *Hogle* and *Nantes* broad framework to resolve the applicability of this exclusion to false imprisonment claims brought by an employee against her employer. No. X08CV084015401S, 2021 Conn. Super. LEXIS 209 (Super. Ct. Mar. 9, 2021).

plaintiffs' injuries arose out of the use of a motor vehicle because Nantes' *negligent act of leaving her car running in the garage was the proximate cause of those injuries.*" [Dkt. 57 p. 5 (citing *Nantes*, 303 Conn. at 758) (second emphasis added)]. Ms. Durso misrepresents the court's emphasis on the negligent act in *Nantes.* In fact, the court only discusses negligence and proximate cause to demonstrate that, because proximate cause is satisfied, it follows that "those injuries necessarily also meet the less stringent standard of mere 'connect[ion] with' Nantes' use of her vehicle." *See Nantes*, 303 Conn. at 759 (citing *Hogle*, 572 Conn. at 577).

Even if the factfinder agreed with Ms. Durso's contention that she tripped over the ramp because of poor lighting conditions, her injuries would then stem from two causes; the unlit driveway and the activation of the mechanical handicap ramp. The court in *Nantes* also found multiple causes of the injuries but "found it irrelevant that an arguably covered event…was a contributing cause of [the injury]". Thus, even if the lighting conditions contributed to her injuries, the motor vehicle liability exclusion still precludes coverage.

Ms. Durso urges the Court to distinguish the present case from the cases Merrimack cites because this case, unlike the cited cases, does not involve a motor vehicle collision or contact with any vehicle. The Court does not find this purported difference persuasive or even accurate. *See e.g.*, *Nantes*, *supra (*applying motor vehicle liability exclusion to injuries sustained from car fumes).

Finally, Ms. Durso argues that the ramp is not "part of the use of [the vehicle]…nor was it in the process of being opened, such that it could be considered 'loading or unloading' under the policy." [Dkt. 57 at 5]. Such a narrow

14

interpretation of the policy language is not in line with the Connecticut Supreme Court's interpretation of substantially identical policy language. *See Hogle* and *Nantes*, *supra*. The only conclusion that a rational jury could come to is that Ms. Durso's injuries arose out of the use, loading, or unloading of Ms. Hodge's vehicle.

IV.    **Automobile Insurance Coverage**

Merrimack argues that the Court should consider Ms. Hodge's coverage under her automobile insurance policy issued by CSAA. Merrimack alleges that, because Ms. Hodge has been afforded defense and indemnity coverage under the CSAA policy, the interests of justice are served by granting summary judgment in this case as Ms. Hodge would not be left without coverage for any liability for Ms. Durso's injuries. The CSAA policy is not part of the record for review on summary judgment. Further, the Court does not find CSAA's coverage relevant to the interpretation of the motor vehicle exclusion which is the issue before the Court.

<u>CONCLUSION</u>

For the above reasons, the Court grants summary judgment in favor of Plaintiff on all claims. The Clerk is directed to enter judgment in favor of Plaintiff and close the case.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated this day in Hartford, Connecticut: March 24, 2022

15